(No. 51270.—

JAMES R. BROWN *et al.*, Appellees, v. MAUREEN M. LOBER, Ex'r, Appellant.

*Opinion filed May 18, 1979.*

Maureen M. Lober, of Litchfield (Gerald Patrick Huber, of counsel), for appellant.

Paul McWilliams, of McWilliams & McWilliams, of Litchfield, for appellees.

MR. JUSTICE UNDERWOOD delivered the opinion of the court:

Plaintiffs instituted this action in the Montgomery County circuit court based on an alleged breach of the covenant of seisin in their warranty deed. The trial court held that although there had been a breach of the covenant of seisin, the suit was barred by the 10-year statute of limitations in section 16 of the Limitations Act (Ill. Rev. Stat. 1975, ch. 83, par. 17). Plaintiffs' post-trial motion, which was based on an alleged breach of the covenant of quiet enjoyment, was also denied. A divided Fifth District Appellate Court reversed and remanded. (63 Ill. App. 3d

727.) We allowed the defendant's petition for leave to appeal.

The parties submitted an agreed statement of facts which sets forth the relevant history of this controversy. Plaintiffs purchased 80 acres of Montgomery County real estate from William and Faith Bost and received a statutory warranty deed (Ill. Rev. Stat. 1957, ch. 30, par. 8), containing no exceptions, dated December 21, 1957. Subsequently, plaintiffs took possession of the land and recorded their deed.

On May 8, 1974, plaintiffs granted a coal option to Consolidated Coal Company (Consolidated) for the coal rights on the 80-acre tract for the sum of $6,000. Approximately two years later, however, plaintiffs "discovered" that they, in fact, owned only a one-third interest in the subsurface coal rights. It is a matter of public record that, in 1947, a prior grantor had reserved a two-thirds interest in the mineral rights on the property. Although plaintiffs had their abstract of title examined in 1958 and 1968 for loan purposes, they contend that until May 4, 1976, they believed that they were the sole owners of the surface and subsurface rights on the 80-acre tract. Upon discovering that a prior grantor had reserved a two-thirds interest in the coal rights, plaintiffs and Consolidated renegotiated their agreement to provide for payment of $2,000 in exchange for a one-third interest in the subsurface coal rights. On May 25, 1976, plaintiffs filed this action against the executor of the estate of Faith Bost, seeking damages in the amount of $4,000.

The deed which plaintiffs received from the Bosts was a general statutory form warranty deed meeting the requirements of section 9 of "An Act concerning conveyances" (Ill. Rev. Stat. 1957, ch. 30, par. 8). That section provides:

> "Every deed in substance in the above form, when

otherwise duly executed, shall be deemed and held a conveyance in fee simple, to the grantee, his heirs or assigns, with covenants on the part of the grantor, (1) that at the time of the making and delivery of such deed he was lawfully seized of an indefeasible estate in fee simple, in and to the premises therein described, and had good right and full power to convey the same; (2) that the same were then free from all incumbrances; and (3) that he warrants to the grantee, his heirs and assigns, the quiet and peaceable possession of such premises, and will defend the title thereto against all persons who may lawfully claim the same. And such covenants shall be obligatory upon any grantor, his heirs and personal representatives, as fully and with like effect as if written at length in such deed." Ill. Rev. Stat. 1957, ch. 30, par. 8.

The effect of this provision is that certain covenants of title are implied in every statutory form warranty deed. Subsection 1 contains the covenant of seisin and the covenant of good right to convey. These covenants, which are considered synonymous (*McNitt v. Turner* (1873), 83 U.S. (16 Wall.) 352, 21 L. Ed. 341), assure the grantee that the grantor is, at the time of the conveyance, lawfully seized and has the power to convey an estate of the quality and quantity which he professes to convey. *Maxwell v. Redd* (1972), 209 Kan. 264, 496 P.2d 1320.

Subsection 2 represents the covenant against incumbrances. An incumbrance is any right to, or interest in, land which may subsist in a third party to the diminution of the value of the estate, but consistent with the passing of the fee by conveyance. *Marathon Builders, Inc. v. Polinger* (1971), 263 Md. 410, 283 A.2d 617; *Aczas v. Stuart Heights, Inc.* (1966), 154 Conn. 54, 221 A.2d 589.

Subsection 3 sets forth the covenant of quiet enjoyment, which is synonymous with the covenant of warranty in Illinois. (*Biwer v. Martin* (1920), 294 Ill. 488; *Barry v. Guild* (1888), 126 Ill. 439; *Bostwick v. Williams* (1864), 36 Ill. 65.) By this covenant, "the grantor warrants to the

grantee, his heirs and assigns, the possession of the premises and that he will defend the title granted by the terms of the deed against persons who may lawfully claim the same, and that such covenant shall be obligatory upon the grantor, his heirs, personal representatives and assigns." *Biwer v. Martin* (1920), 294 Ill. 488, 497.

Plaintiffs' complaint is premised upon the fact that "William Roy Bost and Faith Bost covenanted that they were the owners in fee simple of the above described property at the time of the conveyance to the plaintiffs." While the complaint could be more explicit, it appears that plaintiffs were alleging a cause of action for breach of the covenant of seisin. This court has stated repeatedly that the covenant of seisin is a covenant *in praesenti* and, therefore, if broken at all, is broken at the time of delivery of the deed. *Tone v. Wilson* (1876), 81 Ill. 529; *Jones v. Warner* (1876), 81 Ill. 343.

Since the deed was delivered to the plaintiffs on December 21, 1957, any cause of action for breach of the covenant of seisin would have accrued on that date. The trial court held that this cause of action was barred by the statute of limitations. No question is raised as to the applicability of the 10-year statute of limitations (Ill. Rev. Stat. 1975, ch. 83, par. 17). We conclude, therefore, that the cause of action for breach of the covenant of seisin was properly determined by the trial court to be barred by the statute of limitations since plaintiffs did not file their complaint until May 25, 1976, nearly 20 years after their alleged cause of action accrued.

In their post-trial motion, plaintiffs set forth as an additional theory of recovery an alleged breach of the covenant of quiet enjoyment. The trial court, without explanation, denied the motion. The appellate court reversed, holding that the cause of action on the covenant of quiet enjoyment was not barred by the statute of limitations. The appellate court theorized that plaintiffs'

cause of action did not accrue until 1976, when plaintiffs discovered that they only had a one-third interest in the subsurface coal rights and renegotiated their contract with the coal company for one-third of the previous contract price. The primary issue before us, therefore, is when, if at all, the plaintiffs' cause of action for breach of the covenant of quiet enjoyment is deemed to have accrued.

This court has stated on numerous occasions that, in contrast to the covenant of seisin, the covenant of warranty or quiet enjoyment is prospective in nature and is breached only when there is an actual or constructive eviction of the covenantee by the paramount titleholder. *Biwer v. Martin* (1920), 294 Ill. 488; *Barry v. Guild* (1888), 126 Ill. 439; *Scott v. Kirkendall* (1878), 88 Ill. 465; *Bostwick v. Williams* (1864), 36 Ill. 65; *Moore v. Vail* (1855), 17 Ill. 185.

The cases are also replete with statements to the effect that the mere existence of paramount title in one other than the covenantee is not sufficient to constitute a breach of the covenant of warranty or quiet enjoyment: "[T]here must be a union of acts of disturbance and lawful title, to constitute a breach of the covenant for quiet enjoyment, or warranty ***." (*Barry v. Guild* (1888), 126 Ill. 439, 446.) "[T]here is a general concurrence that something more than the mere existence of a paramount title is necessary to constitute a breach of the covenant of warranty." (*Scott v. Kirkendall* (1878), 88 Ill. 465, 467.) "A mere want of title is no breach of this covenant. There must not only be a want of title, but there must be an ouster under a paramount title." *Moore v. Vail* (1855), 17 Ill. 185, 189.

The question is whether plaintiffs have alleged facts sufficient to constitute a constructive eviction. They argue that if a covenantee fails in his effort to sell an interest in land because he discovers that he does not own what his warranty deed purported to convey, he has suffered a

constructive eviction and is thereby entitled to bring an action against his grantor for breach of the covenant of quiet enjoyment. We think that the decision of this court in *Scott v. Kirkendall* (1878), 88 Ill. 465, is controlling on this issue and compels us to reject plaintiffs' argument.

In *Scott,* an action was brought for breach of the covenant of warranty by a grantee who discovered that other parties had paramount title to the land in question. The land was vacant and unoccupied at all relevant times. This court, in rejecting the grantee's claim that there was a breach of the covenant of quiet enjoyment, quoted the earlier decision in *Moore v. Vail* (1855), 17 Ill. 185, 191:

> " 'Until that time, (the taking possession by the owner of the paramount title,) he might peaceably have entered upon and enjoyed the premises, without resistance or molestation, which was all his grantors covenanted he should do. They did not guarantee to him a perfect title, but the possession and enjoyment of the premises.' " 88 Ill. 465, 468.

Relying on this language in *Moore,* the *Scott* court concluded:

> "We do not see but what this fully decides the present case against the appellant. It holds that the mere existence of a paramount title does not constitute a breach of the covenant. That is all there is here. There has been no assertion of the adverse title. The land has always been vacant. Appellant could at any time have taken peaceable possession of it. He has in no way been prevented or hindered from the enjoyment of the possession by any one having a better right. It was but the possession and enjoyment of the premises which was assured to him, and there has been no disturbance or interference in that respect. True, there is a superior title in another, but appellant

has never felt 'its pressure upon him.' " 88 Ill. 465, 468-69.

Admittedly, *Scott* dealt with surface rights while the case before us concerns subsurface mineral rights. We are, nevertheless, convinced that the reasoning employed in *Scott* is applicable to the present case. While plaintiffs went into possession of the surface area, they cannot be said to have possessed the subsurface minerals. "Possession of the surface does not carry possession of the minerals \*\*\*. [Citation.] To possess the mineral estate, one must undertake the actual removal thereof from the ground or do such other act as will apprise the community that such interest is in the exclusive use and enjoyment of the claiming party." *Failoni v. Chicago & North Western Ry. Co.* (1964), 30 Ill. 2d 258, 262.

Since no one has, as yet, undertaken to remove the coal or otherwise manifested a clear intent to exclusively "possess" the mineral estate, it must be concluded that the subsurface estate is "vacant." As in *Scott,* plaintiffs "could at any time have taken peaceable possession of it. [They have] in no way been prevented or hindered from the enjoyment of the possession by any one having a better right." (88 Ill. 465, 468.) Accordingly, until such time as one holding paramount title interferes with plaintiffs' right of possession (*e.g.,* by beginning to mine the coal), there can be no constructive eviction and, therefore, no breach of the covenant of quiet enjoyment.

What plaintiffs are apparently attempting to do on this appeal is to extend the protection afforded by the covenant of quiet enjoyment. However, we decline to expand the historical scope of this covenant to provide a remedy where another of the covenants of title is so clearly applicable. As this court stated in *Scott v. Kirkendall* (1878), 88 Ill. 465, 469:

> "To sustain the present action would be to confound all distinction between the covenant of

warranty and that of seizin, or of right to convey. They are not equivalent covenants. An action will lie upon the latter, though there be no disturbance of possession. A defect of title will suffice. Not so with the covenant of warranty, or for quiet enjoyment, as has always been held by the prevailing authority."

The covenant of seisin, unquestionably, was breached when the Bosts delivered the deed to plaintiffs, and plaintiffs then had a cause of action. However, despite the fact that it was a matter of public record that there was a reservation of a two-thirds interest in the mineral rights in the earlier deed, plaintiffs failed to bring an action for breach of the covenant of seisin within the 10-year period following delivery of the deed. The likely explanation is that plaintiffs had not secured a title opinion at the time they purchased the property, and the subsequent examiners for the lenders were not concerned with the mineral rights. Plaintiffs' oversight, however, does not justify us in overruling earlier decisions in order to recognize an otherwise premature cause of action. The mere fact that plaintiffs' original contract with Consolidated had to be modified due to their discovery that paramount title to two-thirds of the subsurface minerals belonged to another is not sufficient to constitute the constructive eviction necessary to a breach of the covenant of quiet enjoyment.

Finally, although plaintiffs also have argued in this court that there was a breach of the covenant against incumbrances entitling them to recovery, we decline to address this issue which was argued for the first time on appeal. It is well settled that questions not raised in the trial court will not be considered by this court on appeal. *Kravis v. Smith Marine, Inc.* (1975), 60 Ill. 2d 141; *Ray v. City of Chicago* (1960), 19 Ill. 2d 593.

Accordingly, the judgment of the appellate court is

reversed, and the judgment of the circuit court of Montgomery County is affirmed.

*Appellate court reversed;*
*circuit court affirmed.*